**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRCT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JOHN DOE, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Case No. 1:26-cv-02126 |
| v. | : | |
| | : | JUDGE CHARLES E. FLEMING |
| UNIVERSITY HOSPITALS HEALTH SYSTEM, INC., | : | |
| | : | |
| | : | |
| Defendant. | : | |

## DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S VERIFIED COMPLAINT

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, Defendant University Hospitals Health System, Inc. ("UHHS" or "Defendant"), by and through counsel, respectfully moves for the dismissal of the Verified Complaint filed by Plaintiff John Doe ("Plaintiff"). The Rule 12(b)(1) Motion should be ruled upon prior to the temporary restraining order hearing.

Article III's ripeness doctrine is designed to "prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements." *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985) (quoting *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 148, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967)). In this matter, Plaintiff filed an appeal of a Written Determination under a Title IX policy and the Parties are currently going through a remand process before a second Written Determination is issued. Until the second Written Determination is issued, this Court's review of the matter is premature. Accordingly, pursuant to Rule 12(b)(1), the Complaint should be dismissed and the temporary restraining order hearing cancelled.

As to Rule 12(b)(6), the Verified Complaint should be dismissed for three reasons: (1) Plaintiff has named the wrong defendant; (2) Plaintiff, as an employee of a private hospital, has no private right of action under Title IX and the remedies he seeks in this lawsuit are not available to him; and (3) the Verified Complaint provides no allegations supporting retaliation, discrimination, or breach of contract claims. Accordingly, if this Court has jurisdiction over this matter, the Verified Complaint should be dismissed as a matter of law.

A brief Memorandum in Support of this Motion is attached.

Respectfully submitted,

*/s/ David A. Campbell*
David A. Campbell (0066494)
Alyssa M. Belli (0096623)
Gordon Rees Scully Mansukhani, LLP
127 Public Square, Suite 5130
Cleveland, Ohio 44114
Phone: (216) 302-2531
Fax: (216) 539-0026
dcampbell@grsm.com
ambelli@grsm.com

*Attorneys for Defendant University Hospitals Health System, Inc.*

# MEMORANDUM IN SUPPORT

## I. INTRODUCTION

Plaintiff John Doe ("Plaintiff") is an employee of a non-party to this lawsuit, University Hospitals Cleveland Medical Center ("UHCMC"). A Title IX investigation is ongoing that is determining whether Plaintiff violated UHCM's policies on February 26, 2026 during an interaction with a co-worker, Jane Doe ("Jane"). Jane, now a former UHCMC employee, alleges that Plaintiff sexually assaulted her during a night shift while she was a coworker of Plaintiff.

On July 1, 2026, following an investigation of Jane's allegations, a Written Determination found Plaintiff subject to termination based on unwelcome conduct and sexual assault. Plaintiff internally appealed the Written Determination through UHCMC's Title IX policy and it was remanded to cure procedural issues. Although the remand process is ongoing, Plaintiff filed this Verified Complaint seeking to have this Court alter the remand order to require UHHS to hold a live hearing and to return Plaintiff to active duty (he is on paid leave) with UHCMC.

The Verified Complaint should be dismissed for lack of jurisdiction. The remand process is ongoing and the matter is not yet ripe for this Court's adjudication until a final written determination is issued. If this Court has jurisdiction, the Verified Complaint should still be dismissed for three reasons: (1) Plaintiff has named the wrong defendant; (2) Plaintiff, as an employee of a private hospital, has no private right of action under Title IX and the remedies he seeks in this lawsuit are not available to him; and (3) the Verified Complaint provides no allegations supporting retaliation, discrimination, or breach of contract claims. Accordingly, for the reasons set forth below, the Verified Complaint should be dismissed, the injunction hearing should be canceled, and this matter terminated.

## II. THE PLEADINGS

For purposes of this Motion only, Defendant University Hospitals Health System, Inc. ("UHHS" or "Defendant") will assume the pleadings set forth below are true. UHHS strongly denies many of Plaintiff's allegations, but those issues will not be addressed herein.

### A. Plaintiff Is A Current UHCMC Employee.

Plaintiff recently completed his second-year (PGY-2) in the Case Western Reserve University/University Hospitals Cleveland Medical Center Neurology Residency program (the "Residency Program"). (Complaint at ¶8).[1] The Complaint names UHHS as a defendant, but it does not define UHHS or refer to UHHS directly in the allegations. (Complaint). Attached hereto as Exhibit 1 is Plaintiff's Residency Program contract that verified Plaintiff is an employee of UHCMC, not UHHS. (Exhibit 1, Residency Program contract).

### B. A Written Determination Found Plaintiff Violated UHCMC's Policies.

Plaintiff is the subject of an ongoing Title IX investigation that addresses an incident that occurred on February 26, 2026. (Complaint at ¶36). The complaint alleged that Plaintiff "sexually harassed and/or sexually assaulted Jane through unwelcome sexual statements regarding her appearance and non-consensual touching." (Complaint at ¶40).

Plaintiff concedes that UHCMC investigated the allegations prior to issuing a Written Determination. (Complaint at ¶¶41-59). Following the investigation, on July 1, 2026, an initial Written Determination was issued that found Plaintiff "responsible for unwelcome conduct (Allegation 1) and sexual assault (Allegation 2). . . ." (Complaint at ¶64). Due to the seriousness of the violations, the initial Written Determination imposed the "sanction of dismissal" from the Residency Program. (Complaint at ¶64).

[1] Paragraph 12 of the Complaint explicitly recognizes that UHCMC operates the Residency Program. (Complaint at ¶12).

### C. **Plaintiff Appealed The Written Determination.**

On July 15, 2026, Plaintiff appealed the Written Determination. (Complaint at ¶73). The appeal did not seek a reversal of the dismissal on the merits, but rather a remand to cure procedural issues. (Complaint at ¶73). On August 5, 2026, an Appeal Decision was issued that remanded the matter for further investigation prior to the issuance of a final Written Determination. (Complaint at ¶75).

The remand process is ongoing. (Complaint at ¶¶75-92). Although a final Written Determination has not yet been issued, Plaintiff filed this lawsuit because UHCMC has not agreed to provide Plaintiff with a live hearing. (Complaint at ¶83). In addition, Plaintiff alleges that his paid leave during the remand process is not appropriate. (Complaint at ¶80). Rather, despite the ongoing process to determine whehther Plaintiff sexually assaulted a coworker on the premises during work hours, Plaintiff asks this Court to return him to active employment during the remand process. (Complaint at ¶80).

### D. **The Verified Complaint Presents Conclusory Arguments On Bias.**

The Complaint recognizes that the Residency Program has published a non-discrimination policy that prohibits discrimination based on sex and national origin. (Complaint at ¶16). The Complaint further concedes that UHCMC hired Plaintiff to participate in the Residency Program knowing his national origin. (Complaint at ¶¶28-29).

As to sex discrimination, the Complaint alleges that Title IX, since 2011, has been biased against males. (Complaint at ¶¶19-21). The Complaint further points to a 2023 Case Western University ("CWRU") matter as somehow impacting this matter. (Complaint at ¶¶22-27). The Complaint does not specify how Plaintiff's general disagreement with the laws of this country and with CWRU played a role in his UHCMC employment. (Complaint at ¶¶19-27). The allegations

tying these issues to this case open with "Upon information and belief. . . ." (Complaint at ¶¶96-97).

The national origin allegations are not factually supported. (Complaint at ¶130). Rather, Paragraph 130 appears to allege that the sexual assault was part of Plaintiff's cultural norms that have been mis-perceived by the Title IX investigator and decisionmaker. (Complaint at ¶130 ("characterizing his culturally-normative offers of food to colleagues as evidenc of intimidation and inappropriate conduct. . .").

Finally, as to retaliation, the Complaint alleges that the protected activities are participation in the Title IX investigation and appealing the Written Determination. (Complaint at ¶108). The alleged retaliatory acts are the denial of Plaintiff's deman for a live hearing (which is not promised in the applicable policies) and the denial of Plaintiff's demand to return to active duty with UHCMC. (Complaint at ¶¶109-113). The Complaint does not allege any evidence of retaliation by UHHS or UHCMC. (Complaint at ¶¶108-113).

## III. <u>ARGUMENT – RULE 12(b)(1)</u>

The Rule 12(b)(1) should be ruled upon in advance of the injunction hearing. If this Court does not have jurisdiction over this matter, UHHS should not be required to expend resources in an injunction hearing.

### A. <u>Standard Of Review</u>.

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) challenges the subject-matter jurisdiction of the court. *See* Fed. R. Civ. P. 12(b)(1). If a movant challenges the court's subject-matter jurisdiction under Rule 12(b)(1), then "the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Houchens v. Beshear*, 850 F. App'x 340, 342 (6th Cir. 2021).

Because federal courts are "courts of limited jurisdiction," *McGhee v. Light*, 384 F. Supp. 3d 894, 896 (S.D. Ohio 2019) (quoting *EBI-Detroit, Inc. v. City of Detroit*, 279 F. App'x 340, 344

(6th Cir. 2008)), "a federal court that lacks subject-matter jurisdiction 'lacks the power to hear a case.'" *Chapman v. Seuffert*, 713 F. Supp. 3d 425, 433 (N.D. Ohio 2024). A defendant can challenge subject-matter jurisdiction in one of two ways: a facial attack or a factual attack. *Enriquez-Perdomo v. Newman*, 54 F.4th 855, 861 (6th Cir. 2022). "In a facial attack, a 'movant accepts the alleged jurisdictional facts as true and 'questions merely the sufficiency of the pleading' to invoke federal jurisdiction.' " *Polselli v. United States Dep't of the Treasury–Internal Revenue Serv.*, 23 F.4th 616, 621 (6th Cir. 2022) (citation omitted), aff'd sub nom. *Polselli v. Internal Revenue Serv.*, 598 U.S. 432 (2023). If the challenge is based on the existence of jurisdiction in fact, the court will evaluate the merits of the jurisdictional claims and the plaintiff bears "the burden of proof that jurisdiction does in fact exist." *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996) (*quoting Mortensen v. First Fed. Sav. and Loan Ass'n*, 549 F.2d 884, 890-91 (3d Cir. 1977)).

UHHS is making a facial attack on the Complaint. For purposes of this Motion, the district court assumes the allegations in the Complaint are true. *See Gentek Bldg. Prod., Inc., v. Sherwin Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2017). "If the allegations in the Complaint establish federal claims, the exercise of subject-matter jurisdiction is proper." *Rote v. Zel Custom Mfg. LLC*, 816 F.3d 383, 387 (6th Cir. 2016).

### B. The Remand Process Has Not Yet Been Completed And, Therefore, This Matter Is Not Yet Ripe For Adjudication.

Article III's ripeness doctrine is designed to "prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements." *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985) (quoting *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 148, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967)). To protect against judicial engagement in hypothetical or speculative disputes, "[a] claim is not ripe for adjudication

if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Texas v. United States*, 523 U.S. 296, 300, 118 S.Ct. 1257, 140 L.Ed.2d 406 (1998) (quoting *Thomas*, 473 U.S. at 580–81, 105 S.Ct. 3325).

On July 15, 2026, Plaintiff appealed the initial Written Determination that found he was subject to termination. (Complaint at ¶73). On August 5, 2026, an Appeal Decision was issued that remanded the matter to UHCMC's Title IX office for further investigation prior to the issuance of a final Written Determination. (Complaint at ¶75). The remand process is ongoing. (Complaint at ¶¶75-92).

In *Doe v. Oberlin College*, 60 F.4th 345 (6th Cir. 2023), the Sixth Circuit addressed a case where a Title IX lawsuit was filed "during the Title IX office's ongoing investigation into a fellow student's sexual misconduct accusation against him." *Id.* at 348. The plaintiff in *Oberlin College* alleged that the investigation violated federal due process and Title IX. *Id.* Judge Polster dismissed the lawsuit without prejudice due to the fact that the Title IX process was not completed at the time the lawsuit was filed. *Id.*

The Sixth Circuit held that Judge Polster "was correct" to dismiss the claims for lack of ripeness "because Oberlin's investigation had not finished. . . ." *Id.* at 348 and 351. The *Oberlin* court's is equally applicable to this matter:

> When Doe filed his amended complaint, Oberlin had yet to complete its investigation, let alone begin any hearing process. A formal hearing is necessary for Oberlin to find a violation of its Policy and to impose a disciplinary action, but at the time of Doe's amended complaint, there was no outcome to challenge. Doe's effort to frame the "erroneous outcome" at issue as Oberlin's decision to proceed with a formal resolution process does not change this analysis. That was an interim decision on the proper procedural path, not a final decision like those reviewed in all our prior erroneous outcome decisions.

*Id.* at 355.

The *Oberlin* court applied the same ripeness analysis to the selective enforcement claim asserted by the plaintiff:

> "Claims are fit for review if they present 'purely legal' issues that 'will not be clarified by further factual development.'" Federal courts cannot consider claims depending on "contingent future events that may not occur as anticipated, or indeed may not occur at all." Doe filed his complaint less than a month after Butcher—a hired investigator, not an employee of the university—told him of her impression that Oberlin had no plans to open a retaliation investigation into Roe. Even assuming that Doe's factual allegations are sufficient to state a claim, there was no certainty about what action Oberlin would take on Doe's retaliation claim. After all, as Doe alleges, Oberlin took almost two months to officially begin its investigation into Roe's Title IX complaint. As of the amended complaint's filing, there was a possibility that Oberlin could have opened an investigation into the retaliation complaint against Roe. Under these circumstances, the district court was correct to dismiss the selective enforcement claim on ripeness grounds.

*Id.* at 356-357; *see also Peloe v. University of Cincinnati*, Case No. 1:14-cv-404, 2015 WL 728309 *14 (S.D. Ohio Feb. 19, 2025) ("Defendants argue that Peloe should not be given leave to add the Title IX claim because the claim is not ripe. The Court agrees with Defendants. Peloe has asserted that gender bias caused procedural errors and an erroneous outcome in the first step of a multi-step disciplinary process. He also alleges deliberate indifference on the basis that a person at UC with knowledge of misconduct in the disciplinary proceedings failed to correct the misconduct because Peloe was male. Peloe filed this suit after the ARC panel issued its non-binding recommendation. Peloe did not continue with steps two, three, or four of the disciplinary process. The Court cannot fairly determine at this stage whether gender bias caused an erroneous outcome because Peloe cut off the process before UC made an enforceable decision").

The Title IX process has not yet completed. Accordingly, this Court should dismiss this matter without prejudice and only address Plaintiff's claims if the second Written Determination is adverse to Plaintiff.

## IV. ARGUMENT – RULE 12(b)(6)

### A. Standard Of Review.

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a Rule 12(b)(6) motion for failure to state a claim, the complaint must make out a plausible legal claim, meaning that the complaint's factual allegations must be sufficient for a court "to draw the reasonable inference that the defendant is liable." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility does not require any specific probability of success, but it does demand "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

Courts deciding a Rule 12(b)(6) motion construe the complaint in the light most favorable to plaintiff, accept all factual allegations as true, and draw reasonable inferences in plaintiff's favor. *Cates v. Crystal Clear Techs., LLC*, 874 F.3d 530, 534 (6th Cir. 2017) (quoting *Bickerstaff v. Lucarelli*, 830 F.3d 388, 396 (6th Cir. 2016)). However, courts do not accept legal conclusions or other conclusory allegations as true, nor do they draw unwarranted inferences. *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014) (quoting *Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 275–76 (6th Cir. 2010)).

### B. Plaintiff Has Named The Wrong Defendant.

The Court may review and consider contracts that are referenced in a party's pleadings, even if they were not introduced by the party bringing the action. *See Weiner v. Klais and Co.,* 108 F.3d 86, 89 (6th Cir.1997) (finding that "a defendant may introduce certain pertinent documents if the plaintiff fails to do so ... [and] they are referred to in the plaintiff's complaint"). As to this Motion, the Verified Complaint references Plaintiff's participation in the Residency Program, but

it fails to attach the contract governing that participation that demonstrates that UHCMC is Plaintiff's employer.

Paragraph 12 of the Verified Complaint alleges that UHCMC is affiliated with CWRU with respect to the Residency Program. (Complaint at ¶12). The Verified Complaint further alleges that Plaintiff performs his duties at UHCMC. (Complaint at ¶29). Finally, Exhibit 1 to this Motion is the PGY-2 referenced in the Verified Complaint. (Exhibit 1, PGY-2 Contract). The contract verifies that Plaintiff is employed by UHCMC, not UHHS. (Exhibit 1, PGY-2 Contract).

The Verified Complaint fails to define UHHS or to allege that Plaintiff is an employee of UHHS. Put simply, UHHS is not a proper party to this lawsuit. Accordingly, the Complaint should be dismissed because Plaintiff has named the wrong party.

**C. Plaintiff Cannot Assert A Title IX Claim.**

Plaintiff is an employee of UHCMC, yet he seeks to assert claims under Title IX rather than Title VII. The Sixth Circuit has not held that an employee like Plaintiff can bypass Title VII. *Erikson v. Xavier University*, Case No. 1:23-cv-66, 2024 WL 1156313 *5 (S.D. Ohio March 18, 2024); *Wiler v. Kent State University*, Case No. 5:20-cv-490, 2021 WL 809350 *7 (N.D. Ohio March 3, 2021); *Estes v. University of Cincinnati*, Case No. 1:24-cv-00465-JPH, 2025 WL 2780827 *4 (S.D. Ohio Sept. 30, 2025).

The First, Third, Fourth, and Eighth Circuits allow claims to proceed under both statutes. *See Lipsett v. Univ. of Puerto Rico*, 864 F.2d 881, 896-97 (1st Cir. 1988); *Doe v. Mercy Cath. Med. Ctr.*, 850 F.3d 545, 563-64 (3d Cir. 2017); *Preston v. Virginia ex rel. New River Cmty. Coll.*, 31 F.3d 203, 206 (4th Cir. 1994); *Brim v. Univ. of Iowa*, 90 F.3d 271, 275-76 (8th Cir. 1996). On the other hand, the Fifth and Seventh Circuits have found the preemption argument persuasive. *See Lakoski v. James*, 66 F.3d 751, 753 (5th Cir. 1995); *Waid v. Merrill Area Pub. Schs.*, 91 F. 3d 857,

861-62 (7th Cir. 1996), *rev'd in part on other grounds*, *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246 (2009).

As a UHCMC employee, Plaintiff is protected from sex discrimination, national origin discrimination and retaliation under Title VII. 42 U.S.C. § 2000e et seq.

Because the statutes share the same substantive goals and because Title IX mirrors the same substantive provisions of Title VII of the Civil Rights Act of 1964, courts interpret Title IX by looking to case law interpreting Title VII employment discrimination cases. *Doe v. The Ohio State University*, 239 F.Supp.3d 1048, 1065 (S.D. Ohio 2017) ("Because the statutes share the same substantive goals and because Title IX mirrors the same substantive provisions of Title VII of the Civil Rights Act of 1964, courts interpret Title IX by looking to case law interpreting Title VII employment discrimination cases"). There is no reason to treat a resident differently than the other thousands of employees employed by UHCMC. Accordingly, this Court should not permit Plaintiff to use "Title IX to provide the route for an end-run around Title VII." *Arceneaux v. Vanderbilt University*, 25 Fed.Appx. 345, 349 (6th Cir. 2001) (concurring opinion).

**D. <u>The Verified Complaint Fails To State A Claim Upon Which Relief Can Be Granted</u>.**

Rule 12(b)(6) does not require that this Court accept legal conclusions or legal conclusions cloaked as fact as true. *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009); *Foster v. Michigan*, 573 Fed.Appx. 377, 387 (6th Cir. 2014). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft,* 556 U.S. at 678. Further still, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show [n]'—'that the pleader is entitled to relief.' " *Id.* at 679, 129 S.Ct. 1937 (quoting Fed.R.Civ.P. 8(a)(2)).

In this matter, the complaint is verified, but the factual allegations are conclusory and legal in nature. As to Plaintiff's claims under Title IX, the Verified Complaint alleges that UHHS "faced pressure to act with bias against male respondents in Title IX proceedings and to appear harsh on all claims of sexual harassment brought by females against males." (Complaint at ¶17). However, aside from Plaintiff's negative views of Title IX and its enforcement scheme, the Verified Complaint fails to provide any basis for Plaintiff's claim of selective enforcement.

To prevail on his selective enforcement claim, Plaintiff "must show that a similarly-situated member of the opposite sex was treated more favorably than the plaintiff due to his or her gender." *Doe v. Univ. of Dayton*, 766 F. App'x 275, 284 (6th Cir. 2019) (quoting *Doe v. Cummins*, 662 F. App'x 437, 452 (6th Cir. 2016)). Critical to such a claim is evidence that gender bias motivated the selective enforcement. *See Mallory v. Ohio Univ.*, 76 F. App'x 634, 641 (6th Cir. 2003). Under Title VII, this type of claim requires a plaintiff to show that all relevant aspects of his situation are "nearly identical" to those of the female alleged to be treated more favorably. *Doe v. Oberlin College*, 60 F.4th 345, 356 (6th Cir. 2023) (*citing Mallory v. Ohio Univ.*, 76 F. App'x at 641)).

In *Doe v. BMG Sports, LLC*, 584 F.Supp.3d 497 (S.D. Ohio 2022), the Southern District of Ohio dismissed conclusory allegations of Title IX discrimination:

> These allegations amount to little more than that (1) the School District *has* Title IX obligations, and (2) the District "failed to heed" these obligations. (*Id.*). Such bare-bones and legally conclusory allegations are insufficient to survive a motion to dismiss. As the Supreme Court has explained, a complaint must provide "more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Here, Doe has made no effort to explain the obligations he believes Title IX to impose, or how he believes the School District violated that provision. Consequently, this claim must be dismissed.

*Id.* at 509.

As to national origin discrimination, the Sixth Circuit in *Foster v. Michigan*, 573 Fed.Appx. 377, 387 (6th Cir. 2014), addressed the failures of a conclusory complaint similar to the Verified Complaint in this matter:

> Title VI targets intentional discrimination only. *Alexander*, 532 U.S. at 280, 121 S.Ct. 1511. Appellants, however, fail to plead any plausible claims of intentional discrimination. Rather, Appellants' Title VI race-discrimination claims consist of nothing more than legal conclusions such as "Plaintiffs have been denied participation based upon race, color, national origin, and gender." These conclusory allegations of race discrimination are insufficient. "[A] complaint that includes conclusory allegations of discriminatory intent without additional supporting details does not sufficiently show that the pleader is entitled to relief." *Nali v. Ekman*, 355 Fed.Appx. 909, 913 (6th Cir.2009); *see also Iqbal*, 556 U.S. at 680, 129 S.Ct. 1937. Similarly, the Appellants' allegations that Foster belongs to a suspect class and that BBF is owned by a member of a suspect class—while true—do not state a claim of racially motivated discrimination. *See Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 680–81 (6th Cir.2011); *accord Ashcroft*, 556 U.S. at 680, 129 S.Ct. 1937.

*Id.* at 388-389.

Finally, Count III alleges a breach of contract claim based on UHCMC's Title IX policy. (Complaint at ¶¶115-125).[2] The Verified Complaint fails to identify any portion of the Title IX policy that is being violated after the remand of the Title IX proceeding. *Northampton Rest. Group., Inc. v. FirstMerit Bank, N.A.*, 492 F. App'x 518, 522 (6th Cir. 2012) (quoting *Harris v. American Postal Workers Union*, No. 98-1734, 1999 WL 993882, at *4 (6th Cir. Oct. 19, 1999) ("It is a basic tenet of contract law that a party can only advance a claim of breach of written contract by identifying and presenting the actual terms of the contract allegedly breached"); *Foster v. Health Recovery Servs.*, 493 F.Supp.3d 622, 640 (S.D. Ohio 2020) (observing that "[t]he Sixth Circuit does not permit a party to allege, in a cursory manner, the existence of a contract without

[2] Plaintiff references, but fails to attach the Title IX policy to the Verified Complaint.

citing to specific language that was allegedly breached"). Moreover, the contract is between UHCMC and Plaintiff – UHHS is not Plaintiff's employer. *Doe v. BMG Sports, LLC*, 584 F.Supp.3d 497, 507 (S.D. Ohio 2022) ("Moreover, to the extent Doe presents any specific factual allegations supporting the inference that a contract existed here, it does not appear that the School District was—in fact—party to it").

Put simply, Plaintiff's negative views of Title IX do not create a legal cause of action. *Ashcroft,* 556 U.S. at 678. Accordingly, if this Court has jurisdiction over this matter, the Verified Complaint should be dismissed as a matter of law.

## V. CONCLUSION

Based on the above-cited arguments and authorities, Defendant's Motion to Dismiss should be granted and Plaintiff's Verified Complaint dismissed. In addition, this Court should rule on the Rule 12(b)(1) motion in advance of the injunction hearing.

Respectfully submitted,

*/s/ David A. Campbell*

David A. Campbell (0066494)
Alyssa M. Belli (0096623)
Gordon Rees Scully Mansukhani, LLP
127 Public Square, Suite 5130
Cleveland, Ohio 44114
Phone: (216) 302-2531
Fax: (216) 539-0026
dcampbell@grsm.com
ambelli@grsm.com

*Attorneys for Defendant University Hospitals Health System, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 10th day of September, 2026, the foregoing was filed through the Court's CM/ECF electronic filing system and will be served upon all counsel of record.

*/s/ David A. Campbell*_____________
David A. Campbell (0066494)

*One of the attorneys for Defendant*