Status Active PolicyStat ID 19198274

University Hospitals

| | |
|---|---|
| Origination | 01/2022 |
| Last Approved | 11/2025 |
| Effective | 11/2025 |
| Last Revised | 11/2025 |
| Next Review | 11/2028 |
| Owner | Deborah Marko Koeberer: Director,Compliance Programs & UH Privacy Officer |
| Area | NonDiscrimination in Health Care |
| Applicability | System |
| References | System Policy |

# NDH-02 - Title IX - Prohibited Conduct

COPY

## KEY POINTS

- University Hospitals is committed to maintaining an environment that is free of unlawful harassment. UH does not discriminate on the basis of sex within its educational programs and activities.
- UH prohibits conduct that meets the definition of sexual harassment under Title IX. Conduct not prohibited by Title IX may still be prohibited by other applicable UH policies.
- Discriminatory conduct based on sex must meet specified criteria to be considered Title IX "Prohibited Conduct" as defined by UH policy and federal regulation.

## POLICY STATEMENTS

1. Inappropriate Conduct
   University Hospitals is committed to maintaining an environment that is free of unlawful harassment. UH does not discriminate on the basis of sex within its educational programs and activities.
   1. UH prohibits sex discrimination and sexual harassment as defined by Title IX, as well as other forms of sexual misconduct. Discrimination on the basis of sex, including, but not limited to, sexual harassment, in educational programs and activities may qualify as Prohibited Conduct under Title IX and UH policy. Prohibited Conduct may be subject to formal Corrective Action up to, and including, termination of employment.
   2. Federal regulations provide for certain procedures that must be used in the case of conduct that meets the definition of sexual harassment under Title IX. However,


Copyright © 2026 University Hospitals

Exhibit 1

where conduct does not meet certain requirements under Title IX, the same or similar conduct may still be prohibited by this or other applicable UH policies.

3. **Prohibited Conduct.** For reported behavior to qualify as Prohibited Conduct under this policy, the conduct must meet the elements of a specific type of sexual harassment defined below, and the conduct must meet all of the following threshold requirements, as determined by the Title IX Coordinator:
    1. The conduct must have:
        1. Occurred against a person in the United States;
        2. Occurred within University Hospitals' education programs or activities;
        3. Occurred in a location, event, or circumstances over which University Hospitals exercised substantial control over both the Respondent and the context in which the sexual harassment occurred; and
        4. The Complainant must be participating in or attempting to participate in an education program or activity at, or sponsored by, UH at the time the formal complaint is filed.
4. Conduct that does not meet the above threshold requirements is subject to a Title IX Dismissal. However, conduct that does not meet the Title IX threshold may still be resolved through University Hospitals' non-Title IX Human Resources policies and procedures. Such conduct may be subject to formal Corrective Action up to and including termination. All Title IX complaints dismissed for failing to meet a threshold requirement will be referred to Human Resources for consideration.
5. Sexual Harassment
    1. There are six types of conduct that qualify as "Sexual Harassment" under Title IX, each of which is defined more specifically below:
        1. **Quid Pro Quo.** Conduct on the basis of sex where a University Hospitals employee, or another individual, is in a position of power or authority over the Complainant and conditions the provision of an aid, benefit, or service on the Complainant's participation in Unwelcome Conduct; or,
        2. **Unwelcome Conduct.** Unwelcome conduct on the basis of sex that is determined by a reasonable person to be so severe, pervasive, and objectively offensive that it effectively denies a person equal access to the UH's education programs or activities; or,
        3. **Sexual Assault.** Sexual assault is engaging or attempting to engage in one of the following activities with another individual without consent or where the individual cannot consent because of age or temporary or permanent mental incapacity:
            1. Sexual intercourse (anal, oral, or vaginal), including penetration with a body part (e.g. penis, finger, hand, or tongue) or an object, however slight;

COPY


Copyright © 2026 University Hospitals

   2. Intentional touching of the intimate body part of another for the purpose of sexual gratification, including coercing, forcing, or attempting to coerce or force the Complainant to touch the Respondent or a third party's intimate body part. Intimate body parts include the breasts, buttocks, groin, and genitals.
   3. Sexual intercourse (anal, oral, or vaginal) between individuals who are not permitted to marry. In Ohio, this means that individuals closer in kin than second cousins may not have sexual intercourse.
   4. Sexual intercourse (anal, oral, or vaginal) with a person who is under the statutory age of consent. In Ohio, state law prohibits sex with any individual under the age of 13; additionally, individuals over the age of 18 may not have sex with individuals under the age of 16.

4. **Dating violence.** Conduct on the basis of sex that consists of violence committed by a person who is or has been in a social relationship of a romantic or intimate nature with the Complainant. The existence of such a relationship shall be determined based on the Complainant's statement and other available evidence, and with consideration of the length of the relationship, the type of relationship, and the frequency of interaction between the persons involved in the relationship.
5. **Domestic violence.** A felony or misdemeanor crime of violence constituting conduct on the basis of sex committed by:
   1. a current or former spouse or intimate partner of the victim;
   2. a person with whom the victim shares a child in common;
   3. a person who is cohabitating with, or has cohabitated with, the victim as a spouse or intimate partner;
   4. a person similarly situated to a spouse of the victim under the domestic or family violence laws of the jurisdiction in which the crime of violence occurred, or
   5. any other person against whom an adult or youth victim who is protected from that person's acts under the domestic or family violence laws of the jurisdiction in which the crime of violence occurred.
6. **Stalking.** Conduct on the basis of sex that consists of engaging in a course of conduct directed at a specific person that would cause a reasonable person to fear for the person's safety or the safety of others; or suffer substantial emotional distress. For the purposes of this definition:

COPY


Copyright © 2026 University Hospitals

1. Course of conduct means two or more acts, including, but not limited to, acts in which the respondent directly, indirectly, or through third parties, by any action, method, device, or means, follows, monitors, observes, surveils, threatens, or communicates to or about a person, or interferes with a person's property;
2. Reasonable person means a reasonable person under similar circumstances and with similar identities to the complainant; or,
3. Substantial emotional distress means significant mental suffering or anguish that may, but does not necessarily, require medical or other professional treatment or counseling.

6. There may be situations where Respondent's reported conduct constitutes conduct prohibited by both University Hospitals' Title IX policy and other applicable UH Human Resources policies. The respondent may receive notice of both charges under this and other UH policies and if so, the resolution process will investigate all charges.
7. **Threats Toward an Intimate Partner.** Means any threatened act of violence between individuals who are involved or have been involved in a sexual, dating, spousal, domestic, or other intimate relationship. University Hospitals will evaluate the existence of an intimate relationship based upon the reporting party's statements and other evidence and taking into consideration the length of the relationship, the type of relationship, and the frequency of interaction between the persons involved in the relationship.
8. **Sex/Gender Discrimination.** Discrimination occurs when a behavior or policy has the purpose or effect of restricting or denying an individual's or group's access to opportunities, programs, or resources in relation to sex, gender, gender identity, gender expression, or sexual orientation in a manner that interferes with an individual's working, academic, residential, or social environment participation or performance. Examples of discrimination include but are not limited to:
    1. Treated differently in determining whether such person satisfies any requirement or condition for the provision of any aids, benefits, or services;
    2. Provided different aid, benefits, or services;
    3. Provided aid, benefits, or services in a different manner;
    4. Denied any aids, benefits or services;
    5. Subjected to separate or different rules of behavior, sanctions or other treatment;
    6. Treated differently concerning domicile or residence;
    7. Discriminated against by providing significant assistance to any agency, organization or person which discriminates on the basis of sex in providing any aid, benefit, or service to students, employees;
    8. Otherwise limited in the enjoyment of any rights, privileges, advantages or

COPY


Copyright © 2026 University Hospitals

opportunities with regard to aids, benefits or services; or

9. Treated differently with regard to terms, conditions or benefits of employment, or in the recruitment, consideration or selection thereof.
10. When these or other forms of discrimination are based on sex, gender, gender identity, gender expression or sexual orientation, the conduct will be resolved under this policy. Discrimination that cannot be resolved under this policy may be resolved under other applicable policies and procedures.
11. Discrimination on the basis of sex/gender in employment is permissible in situations where sex/gender is a bona fide occupational qualification reasonably necessary to the normal operation of University Hospitals. Note that the federal regulations regarding Title IX include certain exceptions that do not constitute Sex/Gender Discrimination.

9. **Other Impermissible Conduct.** UH also prohibits Harassment and Sexual Exploitation as defined by this policy. Such conduct is subject to Corrective Action, up to and including termination of employment.
10. **Harassment** on the basis of sex/gender is any unwanted verbal or physical conduct on the basis of sex, gender, gender identity, gender expression, or sexual orientation when one or more of the following conditions is present:
    1. Submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment, participation in a program or activity, or grade in a course or coursework;
    2. Submission to or rejection of such conduct by an individual is used as the basis for employment or educational decisions affecting an individual; or
    3. Such conduct is sufficiently pervasive, offensive, or abusive to have the purpose or reasonable effect of interfering with an individual's work or educational performance, or creating an intimidating, hostile or offensive work environment, under both an objective and subjective standard. A single incident may create a hostile environment if the incident is sufficiently severe.
    4. Examples of harassment on the basis of sex/gender include but are not limited to:
        1. Threatening to "out" a person's gender identity, sexual orientation, gender expression;
        2. Repeatedly leaving notes/photos, etc. on a person's door/locker that demonstrates homophobia or transphobia;
        3. Repeated, and unwanted, comments related to a person's appearance and/or demeanor, e.g., "That tight-fitting top really shows off your curves."
11. The determination as to whether a hostile environment exists is based on the totality of the circumstances, including but not limited to:
    1. The nature and severity of the conduct;

COPY


Copyright © 2026 University Hospitals

2. The type, frequency and duration of the conduct;
3. The identity of and relationship between the respondent and the complainant;
4. The number of individuals involved;
5. The age and maturity levels of the respondent and complainant; and
6. The location of the conduct and the context in which it occurred.

12. **Sexual Exploitation** is knowingly, intentionally or purposefully taking advantage of the sexuality of another person without consent or in a manner that extends the bounds of consensual sexual activity without the knowledge of the other individual for any purpose, including sexual gratification, financial gain, or personal benefit. Examples of Sexual Exploitation include:
    1. Observing another individual's nudity or sexual activity or allowing another to observe consensual sexual activity without the knowledge and consent of all parties involved;
    2. Voyeurism;
    3. Non-consensual streaming of images, photography, video, or audio recording of sexual activity or nudity, or distribution of such without the knowledge and consent of all parties involved;
    4. Non-consensual recording of individuals in locations in which they have a reasonable expectation of privacy, such as restrooms or locker rooms, regardless of whether the images captured reveal sexual activity or nudity;
    5. Prostituting another individual;
    6. Exposing one's genitals in non-consensual circumstances;
    7. Removal of a condom, without consent, during sexual intercourse;
    8. Knowingly exposing another individual to a sexually transmitted infection or virus without that individual's knowledge; and
    9. Inducing incapacitation for the purpose of making another person vulnerable to non-consensual sexual activity, e.g., by using alcohol or other drugs (such as Rohypnol or GHB).

13. **Retaliation** is intimidating, threatening, coercing, or discriminating against any individual:
    1. For the purpose of interfering with any right or privilege secured by Title IX or its implementing regulations; or
    2. Because the individual has made a report or complaint, testified, assisted, or participated or refused to participate in any manner in an investigation, proceeding, or hearing under this Policy or under the complaint procedures relating to Title IX complaints with the U.S. Department of Education's Office for Civil Rights.
    3. Retaliation also includes filing a complaint against an individual for policy or code of conduct violations that do not involve sex discrimination or sexual harassment, but arise out of the same facts or circumstances as a

COPY


Copyright © 2026 University Hospitals

report or complaint of sex discrimination, or a report or formal complaint of sexual harassment, for the purpose of interfering with any right or privilege secured by Title IX law or regulations.

4. Charging an individual with a code of conduct or policy violation for making a materially false statement in bad faith in the course of a proceeding under this Policy does not constitute retaliation, except that a determination regarding responsibility, alone, is not sufficient to conclude that any party made a materially false statement in bad faith.
5. UH prohibits Retaliation as defined by this policy.

2. Definitions
   1. Complainant is an individual who is alleged to be the victim of conduct that could constitute sexual harassment or sex discrimination, as defined in this policy. Complainants may include employees and visitors, as well as other individuals engaged in UH educational programs and activities.
   2. Respondent is an individual who has been reported to be the perpetrator of conduct that could constitute sexual harassment or discrimination.

COPY

## Approval Signatures

| Step Description | Approver | Date |
|---|---|---|
| Chief Executive Officer | Cliff Megerian: Chief Executive Officer,University Hospitals | 11/2025 |
| Executive Leadership | LaVonne Pulliam: Chief Compliance Officer | 11/2025 |
| System Policy Oversight Committee | Freda Juba: Policy and Publications Coordinator | 11/2025 |
| Policy Owner | Deborah Marko Koeberer: Director,Compliance Programs & UH Privacy Officer | 10/2025 |

## Applicability

UH Ahuja, UH Beachwood, UH Cleveland, UH Conneaut, UH Elyria, UH Geneva, UH Home Care, UH Lake West, UH MacDonald, UH Parma, UH Physician Services, UH Portage, UH Rainbow, UH Regional - Geauga, UH Samaritan, UH Seidman, UH St. John, UH TriPoint, University Hospitals

## Standards


Copyright © 2026 University Hospitals

Standard Body: PR.1.SR.2

Chapter: PATIENT RIGHTS (PR)

Standard Body: PR.1.SR.1

Chapter: PATIENT RIGHTS (PR)

Standard Body: GB.2.SR.1

Chapter: GOVERNING BODY (GB)

COPY


Copyright © 2026 University Hospitals