**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRCT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JOHN DOE, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Case No. 1:26-cv-02126 |
| v. | : | |
| | : | JUDGE BRIDGET MEEHAN BRENNAN |
| UNIVERSITY HOSPITALS HEALTH SYSTEM, INC., | : | |
| | : | |
| | : | MAGISTRATE JUDGE JENNIFER DOWDELL ARMSTRONG |
| Defendant. | : | |
| | : | |

**DEFENDANT'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW FOLLOWING HEARING ON MOTION FOR PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

**Page**


I. DEFENDANT'S OBJECTIONS TO PLAINTIFF'S PROPOSED FINDINGS OF FACT ..... 1

II. DEFENDANT'S PROPOSED FINDINGS OF FACT ..... 2

A. Plaintiff Is Employed By Defendant Pursuant To A Contract. ..... 2

B. Defendant Is Investigating An Allegation Of A Serious Policy Violation. ..... 2

C. Plaintiff Has Been On A Paid Administrative Leave Since The July 1, 2026 Written Determination. ..... 3

D. Plaintiff's Paid Leave Of Absence Is Appropriate And Consistent With Plaintiff's J-1 Status. ..... 4

E. Plaintiff Has Requested A Live Hearing Through Defendant's Policies. ..... 5

F. Plaintiff Has No Evidence Of Unfair Or Unequal Treatment. ..... 6

III. DEFENDANT'S OBJECTIONS TO PLAINTIFF'S PROPOSED CONCLUSIONS OF LAW ..... 6

IV. DEFENDANT'S PROPOSED CONCLUSIONS OF LAW ..... 8

A. Standard Of Review. ..... 8

B. The Injunction Hearing Verified That This Matter Is Not Yet Ripe For Adjudication. ..... 9

C. Plaintiff Cannot Prove A Likelihood Of Success On The Merits. ..... 11

1. Plaintiff's breach of contract and national origin claims have no relevance to the request for an injunction. ..... 11

2. Plaintiff's Title IX claims fail because Title IX is not applicable to employees. ..... 12

3. Plaintiff is not entitled to due process because Defendant is a private employer. ..... 13

4. Plaintiff is not entitled to a live hearing. ..... 14

5. Plaintiff is not entitled to return to active employment. ..... 15

D. Plaintiff Cannot Prove Irreparable Harm. ..... 16

E. There Is A Probability Of Substantial Harm To Others. ..................................... 17

F. The Injunction Does Not Advance The Public Interest. ...................................... 18

G. Plaintiff Has Not Established The Rule 65(c) Security Requirement Should Be Waived. ................................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A1 Diabetes & Med. Supply v. Azar*,
937 F.3d 613 (6th Cir. 2019) ....................8

*Arceneaux v. Vanderbilt University*,
25 Fed.Appx. 345 (6th Cir. 2001) (concurring opinion) ....................13

*Branham v. Thomas M. Cooley Law Sch.*,
689 F.3d 558 (6th Cir. 2012) ....................7

*Brim v. Univ. of Iowa*,
90 F.3d 271 (8th Cir. 1996) ....................12

*Crowther v. Board of Regents of the University System of Georgia*,
146 S.Ct. 2635 (2026) ....................12

*D.T. v. Summer Cnty. Schs.*,
942 F.3d 324 (6th Cir. 2019) ....................7, 8, 16

*Doe v. Baum*,
903 F.3d 575 (6th Cir. 2018) ....................7

*Doe v. Mercy Cath. Med. Ctr.*,
850 F.3d 545 (3d Cir. 2017) ....................12

*Doe v. Miami Univ.*,
882 F.3d 579 (6th Cir. 2018) ....................7

*Doe v. Oberlin College*,
60 F.4th 345 (6th Cir. 2023) ....................9, 10, 11

*Doe v. The Ohio State University*,
239 F.Supp.3d 1048 (S.D. Ohio 2017) ....................13

*Erikson v. Xavier University*,
Case No. 1:23-cv-66, 2024 WL 1156313 (S.D. Ohio March 18, 2024) ....................12

*Estes v. University of Cincinnati*,
Case No. 1:24-cv-00465-JPH, 2025 WL 2780827 (S.D. Ohio Sept. 30, 2025) ....................12

*Gordon v. Traverse City Area Public Schools*,
686 Fed.Appx. 315 (6th Cir. 2017) ....................7

*Higuchi Int'l Corp. v. Autoliv ASP, Inc.*,
103 F.4th 400 (6th Cir. 2024) ....................................................................................8, 11

*Hoover Transportation Services, Inc. v. Frye*,
77 Fed.Appx. 776 (6th Cir. 2003) ....................................................................................6, 7

*Joseph v. Board of Regents of the University System of Georgia*,
121 F.4th 855 (11th Cir. 2024) ....................................................................................12

*Lakoski v. James*,
66 F.3d 751 (5th Cir. 1995) ....................................................................................12, 13

*Legacy Roofing Services LLC v. Fusco*,
710 F.Supp.3d 553 (N.D. Ohio 2024)....................................................................................11, 16, 17

*Lipsett v. Univ. of Puerto Rico*,
864 F.2d 881 (1st Cir. 1988)....................................................................................12

*Lorillard Tobacco Co. v. Amouri's Grand Foods, Inc.*,
453 F.3d 377 (6th Cir. 2006) ....................................................................................18

*Mares v. Miami Valley Hospital*,
96 F.4th 945 (6th Cir. 2024) ....................................................................................7, 13

*Memphis A. Philip Randlph Inst. V. Hargett*,
978 F.3d 378 (6th Cir. 2020)....................................................................................17

*Michigan Am. Fed'n of State Cnty. & Mun. Emps. Council 25, Loc. 1640 v. Matrix Hum. Servs.*,
589 F.3d 851 (6th Cir. 2009)....................................................................................19

*Nat'l Park Hosp. Ass'n v. Dep't of Interior*,
538 U.S. 803, 123 S.Ct. 2026, 155 L.Ed.2d 1017 (2003)....................................................................................9

*PCC Airfoils, LLC v. Daugherty*,
176 F.4th 509 (6th Cir. 2026) ....................................................................................8

*Preston v. Virginia ex rel. New River Cmty. Coll.*,
31 F.3d 203 (4th Cir. 1994) ....................................................................................12

*Procter & Gamble Co. v. Ga.-Pac. Consumer Prods. LP*,
No. 1:09-cv-318, 2009 WL 2407764 (S.D. Ohio Aug. 3, 2009) ....................................................................................17

*SW Nashville EB Owner, LLC v. Metropolitan Govt. of Nashville & Davidson County*,
187 F.4th 807 (6th Cir. 2026) ....................................................................................9

*Tascarella v. Aptiv US General Services Partnership*,
Case No. 26-3101, 2026 WL 2243787 (6th Cir. Aug. 4, 2026) .......................................7, 16, 17

*Texas v. United States*,
523 U.S. 296, 118 S.Ct. 1257, 140 L.Ed.2d 406 (1998) .........................................................9

*Trump v. New York*,
592 U.S. 125, 141 S.Ct. 530, 208 L.Ed.2d 365 (2020) ............................................................9

*W.R. Grace & Co. v. Loc. Union 759, Int'l Union of United Rubber, Cork, Linoleum & Plastic Workers of Am.*,
461 U.S. 757, 103 S. Ct. 2177, 76 L. Ed. 2d 298 (1983) ........................................................19

*Waid v. Merrill Area Pub. Schs.*,
91 F. 3d 857 (7th Cir. 1996), *rev'd in part on other grounds*, *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246 (2009) .......................................................................12

*Wiler v. Kent State University*,
Case No. 5:20-cv-490, 2021 WL 809350 (N.D. Ohio March 3, 2021) ..................................12

*Winter v. Nat. Res. Def. Council, Inc.*,
555 U.S. 7, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008) .................................................................8

**Statutes**

42 U.S.C. § 2000e et seq. .........................................................................................................13

Civil Rights Act of 1964 Title VII ............................................................................................13

**Rules**

Fed. R. Civ. P. 65 .....................................................................................................................19

Federal Rule of Civil Procedure 65(c) ......................................................................................19

**Other Authorities**

34 C.F.R. § 106.44(d) ...............................................................................................................15

34 CFR § 106.45(b)(6)(i) ...........................................................................................................14

85 FR 30026 ...............................................................................................................................14

85 FR 30446-30447 ...................................................................................................................14

Defendant University Hospitals Cleveland Medical Center ("UHCMC" or "Defendant") submits the following Proposed Findings of Fact and Conclusions of Law pursuant to the Court's directive at the close of the October 7, 2026 hearing on Plaintiff John Doe's ("Plaintiff") Motion for Temporary Restraining Order and Preliminary Injunction (Doc. #2).

## I. DEFENDANT'S OBJECTIONS TO PLAINTIFF'S PROPOSED FINDINGS OF FACT

Defendant objects to Plaintiff's proposed findings of fact and sets forth its own proposed findings in Section II. The following proposed findings are specifically objected to on the following grounds:

- Paragraph 2: Plaintiff did not present evidence that Jane Doe was not presented with a request for confidentiality or that Jane Doe disclosed the complaint to third parties. Accordingly, Paragraph 2 of the proposed factual findings is not appropriate. (Doc. #49 at ¶2);
- Paragraph 8: Plaintiff's allegations regarding Sweeney's testimony is inappropriate. Sweeney testified that he did not make the decision on whether Plaintiff would return to active employment. (Hearing Transcript at 227 (hereinafter "TR. at __")). ("Q. Did you make the decision as to whether Dr. Doe would be returned to work or not? A. No, I did not"));
- Paragraph 9: Plaintiff misstates his expert's testimony on the leave of absence. Plaintiff's Title IX expert admitted that the Title IX regulations do not require employers to conduct an individualized safety analysis before placing employees on leaves of absence. (TR. at 180). In fact, the Title IX expert conceded that a leave of absence is common when an employee is accused of sexual assault. (TR. at 183);
- Paragraph 11: Plaintiff misstates his expert's testimony on the leave of absence. Plaintiff's Title IX expert admitted that the Title IX regulations do not require employers to conduct an individualized safety analysis before placing employees on leaves of absence. (TR. at 180). In fact, the Title IX expert conceded that a leave of absence is common when an employee is accused of sexual assault. (TR. at 183);
- Paragraph 15: Sweeney's former employment at Case Western Reserve University has no relevance to this proceeding;
- Paragraphs 24-28: Plaintiff has presented no legal decision that applies live hearings or an individualized safety analysis to an employee; and
- Paragraph 33: Plaintiff mistates his immigration expert's testimony. Plaintiff's immigration expert conceded that approved leaves of absences are appropriate for J-1 Visa holders. (TR. at 106-107). More importantly, despite the expert's law firm handling many J-1 Visa issues for residents in North Carolina (TR. at 110),

> Plaintiff's immigration expert has never seen a situation where an individual is deported when the J-1 sponsor has approved a leave of absence. (TR. at 109); (*see also* Tr. at 110).

## II. <u>DEFENDANT'S PROPOSED FINDINGS OF FACT</u>

The following findings are based on the Transcript of Proceedings from the October 7, 2026 injunction hearing.

### A. <u>Plaintiff Is Employed By Defendant Pursuant To A Contract.</u>

Plaintiff is employed as a resident in Defendant's neurology residency program. (TR. at Ex. 15). Plaintiff's employment is governed by University Hospitals Cleveland Medical Center Resident/Fellowship Program Contract (the "Employment Contract"). (TR. at 23 and Ex. 15). The neurology residency program is four years. (TR. at 23-24). Plaintiff is in his third year of the neurology program. (TR. at 23).

Plaintiff is from Saudi Arabia. (TR. at 19). Plaintiff is working in the United States pursuant to a J-1 Visa. (TR. at 31). Plaintiff's Visa sponsor is Intealth pursuant to the Educational Commission for Foreign Medical Graduates ("ECFMG"). (TR. at 37 and 87). Defendant's residency and fellowship programs have nearly two hundred employees working pursuant to Visas, including one hundred and fifty-five residents working pursuant to J-1 Visas. (TR. at 128).

### B. <u>Defendant Is Investigating An Allegation Of A Serious Policy Violation.</u>

The Employment Contract requires Plaintiff to comply with Defendant's Code of Conduct. (TR. at 64 and Ex. 15). In addition, Plaintiff admits that he and other residents have to comply with Defendant's discrimination and harassment policies. (TR. at 64-65).

On March 5, 2026, Plaintiff received notice of a Title IX investigation. (TR. at 35 and Ex. 8). The complaint alleges that Plaintiff sexually harassed and/or sexually assaulted a co-worker. (TR. at 69). Plaintiff admitted that the allegations in the complaint were "serious." (TR. at 38 and

69). Following the initial investigation, a written determination was issued on July 1, 2026 that found Plaintiff responsible for the allegations. (TR. at 43 and 69-70). The sanction issued was termination of employment. (TR. at 43).

Consistent with Plaintiff's view that the Title IX issues are serious, Plaintiff has been unsuccessful in forty transfer applications to other residency programs. (TR. at 48 and Exs. 19-25). Plaintiff has disclosed the Title IX complaint, investigation, and initial written determination when applying to transfer to other programs. (TR. at 52). Plaintiff has received approximately thirty rejection notices. (TR. at 48).

Plaintiff appealed the determination through Defendant's policies. (TR. at 43). Plaintiff prevailed on the appeal on procedural grounds and the matter was returned to Defendant's compliance team for investigation. (TR. at 43). Defendant's investigation is ongoing. (TR. at 212).

### C. <u>Plaintiff Has Been On A Paid Administrative Leave Since The July 1, 2026 Written Determination.</u>

Plaintiff has been on a leave of absence since the written determination was issued on July 1, 2026. (TR. at 27). Plaintiff has been paid during the administrative leave of absence. (TR. at 72-73).

Defendant's Graduate Medical Education Senior Specialist-Training Program Liaison kept Intealth updated on the investigation and Plaintiff's leave status in 2026. (TR. at 122-123 and 128). Intealth has made clear to Defendant that Plaintiff's J-1 Visa will remain valid until Defendant issues a second determination in the Title IX matter. (TR. at 130-131 (Q. And when you communicated with the sponsor, did you ask them exactly how long they'll keep the sponsorship open? A. Yes. Q. And what did they tell you? A. Until a decision has been made from our system)).

The Saudi Arabian Cultural Mission ("SACM") pays Plaintiff's salary with Defendant. (TR. at 61). However, Plaintiff has not notified SACM of the complaint, the investigation, or his administrative leave of absence. (TR. at 61-62).

**D. Plaintiff's Paid Leave Of Absence Is Appropriate And Consistent With Plaintiff's J-1 Status.**

Plaintiff admitted that Defendant has a duty to provide a safe environment for employees and patients. (TR. at 68). As a resident, Plaintiff is assigned day and night shifts, works at a large hospital, and rotates to hospitals not operated by Defendant. (TR. at 65). Most importantly, Plaintiff is not always with a supervisor during his workdays. (TR. at 67-68 ("Q. Okay. You do walk the hospital. It's a very large hospital and you interact with visitors and patients and other employees without a supervisor present, correct? A. Yes")).

Plaintiff objected to the paid leave of absence through a written submission to Defendant. (TR. at 44). However, Plaintiff admits that Defendant did not accept his objection and he remains on a paid leave of absence as of the hearing date. (TR. at 44).

Plaintiff's Title IX expert admitted that the Title IX regulations do not require employers to conduct an individualized safety analysis before placing employees on leaves of absence. (TR. at 180 ("Q. You are clear that for employees, there is no individualized safety requirement, right? A. Right)). In fact, the Title IX expert conceded that a leave of absence is common when an employee is accused of sexual assault:

> Q. And just to be clear, as to employees, as a human resources professional, if there's a assault allegation, placing an employee on a paid administrative leave is pretty standard practice, correct? A. Correct.

(TR. at 183).

Plaintiff's immigration expert conceded that approved leaves of absences are appropriate for J-1 Visa holders. (TR. at 106-107). More importantly, despite the expert's law firm handling

many J-1 Visa issues for residents in North Carolina (TR. at 110), Plaintiff's immigration expert has never seen a situation where an individual is deported when the J-1 sponsor has approved a leave of absence:

> Q. Have you ever dealt with a situation where the sponsor has approved an administrative leave and the Department of Homeland Security or Secretary of State have come in and deported a resident?
> A. I have not seen that happen, no, sir.

(TR. at 109); (*see also* Tr. at 110 ("Q. And if the sponsor has approved it and advised the site sponsor of that, the alleged risks relating to this administrative leave are very minimal, correct? A. I don't know if I would necessarily kind of categorize it as minimal. It would – you know, if I represented Mr. Doe in a personal capacity, I would be very concerned about it, given the immigration environment. So I mean I think it would be more than a scant chance of a possibility")).

### E. <u>Plaintiff Has Requested A Live Hearing Through Defendant's Policies.</u>

Prior to the July 1 written determination, Plaintiff never requested a live hearing. (TR. at 228). Following the written determination, Plaintiff has requested a live hearing. (TR. at 45). Defendant's policies do not provide for a live hearing. (TR. at 219). Consistent with Defendant's policies, Plaintiff's request for a live hearing was denied. (TR. at 45).

Plaintiff's Title IX expert conceded that academic medical centers are not required to provide live hearings under the Title IX regulations. (TR. at 149-150 ("Q. Are academic medical centers required to hold live hearings? A. Academic Medical Centers are not typically required to hold live hearings, no")). In fact, two of the four academic medical centers that the Title IX regularly consults with do not offer live hearings to residents. (TR. at 181).

### F. Plaintiff Has No Evidence Of Unfair Or Unequal Treatment.

Plaintiff admitted that the Title IX complaint and investigation is a serious issue for any of Defendant's residents – regardless of national origin. (TR. at 70 ("Q. For any resident, whether you're Saudi Arabian, United States, or some other country, correct? A. Yes"). Despite filing this lawsuit, Plaintiff cannot point to any other resident or fellow who has not been placed on an administrative leave when facing such serious allegations. (TR. at 63).

Similarly, Plaintiff has no knowledge of any female resident who has requested a live Title IX hearing. (TR. at 72 ("Q. You know of any female resident who requested a live hearing? A. I don't know")). In fact, Plaintiff has no knowledge of any other fellow or resident who has requested a live Title IX hearing. (TR. at 72 ("Q. Okay. Let me just, to wrap up, let me just ask you. Do you know of any other resident at UHCMC who's been given a lvie hearing? A. I don't know")).

Finally, as to Plaintiff's national origin, the Graduate Medical Education Senior Specialist-Training Program Liason testified that she works with nearly two hundred Visa holder residents and fellows. (TR. at 128). Plaintiff was treated pursuant to Defendant's Visa policies and treated the same as all other Visa holders working with Defendant. (TR. at 128-129).

## III. DEFENDANT'S OBJECTIONS TO PLAINTIFF'S PROPOSED CONCLUSIONS OF LAW

Defendant sets forth its Proposed Conclusions of Law in the following section. Defendant further objects to the following paragraphs, authorities and arguments set forth in Plaintiff's proposed conclusions of law.

- Paragraph 34: Plaintiff cites *Hoover Transportation Services, Inc. v. Frye*, 77 Fed.Appx. 776 (6th Cir. 2003), for the proposition that the "likelihood of success on any one claim suffices." (Doc. #49 at ¶34). The *Hoover* case does state, a plaintiff "can show a likelihood of success on the merits of any of the claims" (*Id.* at 781), but the claim that the moving party showed a likelihood of success on in *Hoover* supported the injunction relief that was issued (*Id.* at 781-784). In *Hoover*, the

Sixth Circuit held that the moving party proved a likelihood of success on at least one claim supporting the injunctive relief. *Id.* at 783-784. In this matter, Plaintiff cannot prove a likelihood of success on any claim, but the injunctive relief sought is under Title IX. Accordingly, the only claim relevant to this Motion is the Title IX claim;

- Paragraph 36: Plaintiff cites *Mares v. Miami Valley Hospital*, 96 F.4th 945 (6th Cir. 2024), requires due process for medical residents. (Doc. #49 at ¶36). However, footnote five of *Mares* is applicable to Defendant, a private institution: "To the extent that Mares asserts a procedural due process claim against MVH, it also fails. MVH is a private entity, and Mares did not have a constitutionally protected right to remain employed at MVH. *Branham v. Thomas M. Cooley Law Sch.*, 689 F.3d 558, 564–65 (6th Cir. 2012)." *Mares*, 96 F.4th at fn. 5;
- Paragraph 38: Plaintiff alleges an "erroneous outcome" claim. (Doc. #49 at ¶38). However, the claim requires an "outcome." *Doe v. Baum*, 903 F.3d 575, 585 (6th Cir. 2018); *Doe v. Miami Univ.*, 882 F.3d 579, 592 (6th Cir. 2018)). In this matter, a final determination has not yet been issued by Defendant;
- Paragraph 40: Plaintiff is arguing for a neutral decision maker. (Doc. #49 at ¶40). The injunction hearing included no evidence on this issue and the paragraph fails to cite to the transcript. (Doc. #49 at ¶40);
- Paragraph 43: To prove a retaliation claim, Plaintiff must prove an adverse action. *Gordon v. Traverse City Area Public Schools*, 686 Fed.Appx. 315, 320 (6th Cir. 2017). No final outcome has yet been issued and Plaintiff presents no case that addresses an interim measure as an adverse action under Title IX;
- Paragraphs 44-46: Plaintiff elicited testimony that established that Defendant's written Title IX policies do not afford a live hearing. (TR. at 219). Accordingly, a breach of contract claim is not relevant to this Motion.
- Paragraphs 47-48: Plaintiff did not establish that Title VI provides for live hearings. (Doc. #49 at ¶¶47-48). Accordingly, the Title VI claims is not relevant to this Motion;
- Paragraphs 49-58: In *Tascarella v. Aptiv US General Services Partnership*, Case No. 26-3101, 2026 WL 2243787 (6th Cir. Aug. 4, 2026), recently confirmed that the alleged harm "'must be both certain and immediate,' not 'speculative or theoretical.'" *Id.* at *3 (*citing D.T. v. Summer Cnty. Schs.*, 942 F.3d 324, 327 (6th Cir. 2019)). Plaintiff cannot prove certain and immediate harm;
- Paragraph 55: Plaintiff argues that an individualized safety and risk analysis should have been conducted. (Doc. #49 at ¶55). The regulations do not provide for such an analysis for employees, but if any relief is granted it should be to remand to Defendant's Title IX department to conduct such an analysis, not a return to active employment;
- Paragraph 59: Plaintiff argues that working is the status quo. (Doc. #49 at ¶59). To the contrary, this lawsuit was filed September 1, 2026 and Plaintiff has been on an administrative leave since July 1, 2026;
- Paragraph 60: Plaintiff argues that no potential harm to third parties has been shown. (Doc. #49 at ¶60). To the contrary, Plaintiff admitted that he works night shifts, walks a large hospital and works in third party hospitals without direct

supervision. (TR. at 65-68). Accordingly, there is evidence of risk of harm to third parties;

- Paragraph 61: Plaintiff asks this Court to disregard Title IX regulations and to intervene in an ongoing Title IX investigation. The public interests do not support such overreach; and
- Paragraphs 62-63: If Plaintiff is returned to active employment, a large security bond should be required. Plaintiff has significant assets based on his extensive litigation of this case with a large law firm, several attorneys, and two expert witnesses.

## IV. DEFENDANT'S PROPOSED CONCLUSIONS OF LAW

### A. Standard Of Review.

When faced with requests for a preliminary injunction, district courts consider four factors: (1) the plaintiff's likelihood of success on the merits; (2) the risk of irreparable harm to the plaintiff in the absence of an injunction; (3) the risk that an injunction will harm others; and (4) the broader public interest. *PCC Airfoils, LLC v. Daugherty*, 176 F.4th 509, 512-513 (6th Cir. 2026); *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008); *A1 Diabetes & Med. Supply v. Azar*, 937 F.3d 613, 618 (6th Cir. 2019). "Courts, generally speaking, should engage with all four factors in a sliding-scale inquiry." *PCC Airfoils, LLC*, 176 F.4th at 513.

However, "[t]wo qualifications exist." *Id.* "If the plaintiff has 'no likelihood of success on the merits,' there is nothing left to balance and the plaintiff's request for a preliminary injunction must fail regardless of its showing on the other factors." *Id.* (*citing Higuchi Int'l Corp. v. Autoliv ASP, Inc.*, 103 F.4th 400, 409 (6th Cir. 2024)). Similarly, "a court must reject a plaintiff's request for a preliminary injunction if it fails to show any risk of irreparable injury." *PCC Airfoils, LLC*, 176 F.4th at 513. "[A]lthough the *extent* of an injury may be balanced against other factors, the *existence* of an irreparable injury is mandatory." *D.T. v. Sumner Cnty. Schs.*, 942 F.3d 324, 327 (6th Cir. 2019) (emphasis in original).

**B. <u>The Injunction Hearing Verified That This Matter Is Not Yet Ripe For Adjudication.</u>**

The injunction hearing verified that Plaintiff raised the issues that he is raising in this Court – a live hearing and challenging his administrative leave -- through the appeal and remand process under Defendant's Title IX procedures. (TR. at 44-45). In addition, a second determination post-remand has not yet been issued. (TR. at 212).

The Sixth Circuit in *SW Nashville EB Owner, LLC v. Metropolitan Govt. of Nashville & Davidson County*, 187 F.4th 807 (6th Cir. 2026), recently addressed the ripeness doctrine. *Id.* at 811-812. The *SW Nashville* court first held that Constitutional ripeness is not met if a claim "'rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all,' it is 'not ripe for adjudication.'" *Id.* at 813 (*citing Texas v. United States*, 523 U.S. 296, 300, 118 S.Ct. 1257, 140 L.Ed.2d 406 (1998) (citation omitted); *accord Trump v. New York*, 592 U.S. 125, 131, 141 S.Ct. 530, 208 L.Ed.2d 365 (2020)). In this matter, the investigation is ongoing and the second written determination could be favorable to Plaintiff. Accordingly, this case is not Constitutionally ripe.

However, the *SW Nashville* court also addressed prudential ripeness. *Id.* at 813. The "[r]ipeness doctrine's prudential dimension, by contrast, reflects courts' concerns about how and when we may bring the power of the federal judiciary to bear." *Id.* (*citing Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 807-08, 123 S.Ct. 2026, 155 L.Ed.2d 1017 (2003)). The Title IX process is designed to provide due process prior to a lawsuit. Plaintiff's lawsuit should be adjudicated once a final determination is issued by Defendant – not litigated during a remand process that includes an ongoing investigation.

In *Doe v. Oberlin College*, 60 F.4th 345 (6th Cir. 2023), the Sixth Circuit addressed a case where a Title IX lawsuit was filed "during the Title IX office's ongoing investigation into a fellow

student's sexual misconduct accusation against him." *Id.* at 348. The plaintiff in *Oberlin College* alleged that the investigation violated federal due process and Title IX. *Id.* Judge Polster dismissed the lawsuit without prejudice due to the fact that the Title IX process was not completed at the time the lawsuit was filed. *Id.*

The Sixth Circuit held that Judge Polster "was correct" to dismiss the claims for lack of ripeness "because Oberlin's investigation had not finished. . . ." *Id.* at 348 and 351. The *Oberlin* court's analysis is equally applicable to this matter:

> When Doe filed his amended complaint, Oberlin had yet to complete its investigation, let alone begin any hearing process. A formal hearing is necessary for Oberlin to find a violation of its Policy and to impose a disciplinary action, but at the time of Doe's amended complaint, there was no outcome to challenge. Doe's effort to frame the "erroneous outcome" at issue as Oberlin's decision to proceed with a formal resolution process does not change this analysis. That was an interim decision on the proper procedural path, not a final decision like those reviewed in all our prior erroneous outcome decisions.

*Id.* at 355.

The *Oberlin* court applied the same ripeness analysis to the selective enforcement claim asserted by the plaintiff:

> "Claims are fit for review if they present 'purely legal' issues that 'will not be clarified by further factual development.'" Federal courts cannot consider claims depending on "contingent future events that may not occur as anticipated, or indeed may not occur at all." Doe filed his complaint less than a month after Butcher—a hired investigator, not an employee of the university—told him of her impression that Oberlin had no plans to open a retaliation investigation into Roe. Even assuming that Doe's factual allegations are sufficient to state a claim, there was no certainty about what action Oberlin would take on Doe's retaliation claim. After all, as Doe alleges, Oberlin took almost two months to officially begin its investigation into Roe's Title IX complaint. As of the amended complaint's filing, there was a possibility that Oberlin could have opened an investigation into the retaliation complaint against Roe.

> Under these circumstances, the district court was correct to dismiss the selective enforcement claim on ripeness grounds.

*Id.* at 356-357.

Defendant's Title IX process has not yet been completed. Accordingly, this lawsuit should be dismissed without prejudice and refiled only if the second Written Determination is adverse to Plaintiff.

**C. <u>Plaintiff Cannot Prove A Likelihood Of Success On The Merits.</u>**

Likelihood of success on the merits is a mandatory factor. *Legacy Roofing Services LLC v. Fusco*, 710 F.Supp.3d 553, 563 (N.D. Ohio 2024). This factor is "typically the most important" factor in the analysis. *Higuchi Int'l Corp. v. Autoliv ASP, Inc.*, 103 F.4th 400, 409 (6th Cir. 2024). In this matter, the injunction is denied because Plaintiff has not shown a likelihood of success on the merits.

**1. Plaintiff's breach of contract and national origin claims have no relevance to the request for an injunction.**

Plaintiff elicited testimony that verified Defendant's policies do not provide for a live hearing. (TR. at 219). Similarly, Plaintiff has not alleged that Defendant's policies require an individualized safety and risk analysis prior to an employee's administrative leave of absence. Accordingly, Plaintiff's breach of contract claim is not relevant to the relief sought in this injunction proceeding.

Similarly, Plaintiff's Title VI claim does not address live hearings or an administrative leave during a Title IX investigation. Accordingly, the Title VI claim is also not relevant to this injunction proceeding.

**2. Plaintiff's Title IX claims fail because Title IX is not applicable to employees.**

Plaintiff is employed as a resident in Defendant's neurology residency program. (TR. at Ex. 15). The Supreme Court has accepted certification of the issue of whether Title IX covers employees in *Crowther v. Board of Regents of the University System of Georgia*, 146 S.Ct. 2635 (2026). Oral argument is scheduled for November 30, 2026.

The Eleventh Circuit decision at issue, *Joseph v. Board of Regents of the University System of Georgia*, 121 F.4th 855 (11th Cir. 2024), addressed the same issue as in this case – does an employee have a cause of action under Title IX. *Id.* at 864. The Eleventh Circuit's holding is equally applicable to this case: "But Supreme Court precedent requires us to ask a more fundamental question: whether Title IX provides an implied right of action for sex discrimination in employment. We hold that it does not." *Id.*

The Sixth Circuit has not held that an employee like Plaintiff can bypass Title VII. *Erikson v. Xavier University*, Case No. 1:23-cv-66, 2024 WL 1156313 *5 (S.D. Ohio March 18, 2024); *Wiler v. Kent State University*, Case No. 5:20-cv-490, 2021 WL 809350 *7 (N.D. Ohio March 3, 2021); *Estes v. University of Cincinnati*, Case No. 1:24-cv-00465-JPH, 2025 WL 2780827 *4 (S.D. Ohio Sept. 30, 2025).

The First, Third, Fourth, and Eighth Circuits allow claims to proceed under both statutes. *See Lipsett v. Univ. of Puerto Rico*, 864 F.2d 881, 896-97 (1st Cir. 1988); *Doe v. Mercy Cath. Med. Ctr.*, 850 F.3d 545, 563-64 (3d Cir. 2017); *Preston v. Virginia ex rel. New River Cmty. Coll.*, 31 F.3d 203, 206 (4th Cir. 1994); *Brim v. Univ. of Iowa*, 90 F.3d 271, 275-76 (8th Cir. 1996). On the other hand, the Fifth and Seventh Circuits have found the preemption argument persuasive. *See Lakoski v. James*, 66 F.3d 751, 753 (5th Cir. 1995); *Waid v. Merrill Area Pub. Schs.*, 91 F. 3d 857,

861-62 (7th Cir. 1996), *rev'd in part on other grounds*, *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246 (2009).

As a UHCMC employee, Plaintiff is protected from sex discrimination, national origin discrimination and retaliation under Title VII. 42 U.S.C. § 2000e et seq.; *Lakoski v. James,* 66 F.3d 751, 757 (5th Cir.1995) ("Finally, other circuit courts have acknowledged that the prohibitions of discrimination on the basis of sex of Title IX and Title VII are the same."). Title IX mirrors the same substantive provisions of Title VII of the Civil Rights Act of 1964. *Doe v. The Ohio State University*, 239 F.Supp.3d 1048, 1065 (S.D. Ohio 2017) ("Because the statutes share the same substantive goals and because Title IX mirrors the same substantive provisions of Title VII of the Civil Rights Act of 1964, courts interpret Title IX by looking to case law interpreting Title VII employment discrimination cases"). Plaintiff cannot utilize "Title IX to provide the route for an end-run around Title VII." *Arceneaux v. Vanderbilt University*, 25 Fed.Appx. 345, 349 (6th Cir. 2001) (concurring opinion).

**3. Plaintiff is not entitled to due process because Defendant is a private employer.**

Plaintiff cites *Mares v. Miami Valley Hospital*, 96 F.4th 945 (6th Cir. 2024), as precedent that requires due process for medical residents. (Doc. #49 at ¶36). However, Defendant is a private employer. (TR. at Ex. 15). In addition, the alleged joint employer, Case Western Reserve University, is also a private educational institution. (TR. at 197). In footnote five of *Mares*, the Sixth Circuit made clear that its due process holding has no application to private institutions: "To the extent that Mares asserts a procedural due process claim against MVH, it also fails. MVH is a private entity, and Mares did not have a constitutionally protected right to remain employed at MVH. *Branham v. Thomas M. Cooley Law Sch.*, 689 F.3d 558, 564–65 (6th Cir. 2012)." *Mares*, 96 F.4th at fn. 5. Accordingly, Plaintiff is not entitled to due process under the Constitution.

However, Plaintiff has been given significant due process rights by Defendant. The investigation has taken months to complete and it is significant. In addition, Plaintiff has appeal rights and is represented by counsel during the adjudication process. Accordingly, although not entitled to due process under the Constitution, Plaintiff has been afforded significant due process rights under Defendant's Title IX policies.

**4. Plaintiff is not entitled to a live hearing.**

UHCMC's Title IX policy does not provide for a live hearing. (TR. at 219). In addition, the Title IX regulations do not require UHCMC to provide live hearing options under its Title IX policy. 34 CFR §106.45(b)(6)(i).

Plaintiff's Title IX expert conceded that academic medical centers are not required to provide live hearings under the Title IX regulations. (TR. at 149-150 ("Q. Are academic medical centers required to hold live hearings? A. Academic Medical Centers are not typically required to hold live hearings, no")). In fact, two of the four academic medical centers that the Title IX regularly consults with do not offer live hearings to residents. (TR. at 181).

34 CFR §106.45(b)(6)(i) requires a live hearing only for post-secondary institutions. A medical center running a residency program is not a post-secondary institution. The Final Rule specifically made this distinction, recognizing that medical centers are not required to hold live hearings. *See* 85 FR 30026, 30446-30447. Plaintiff does not cite to regulations or any decision interpreting the Title IX regulations as supporting a live hearing.

Finally, Plaintiff has no knowledge of any other fellow or resident who has requested a live Title IX hearing. (TR. at 72 ("Q. Okay. Let me just, to wrap up, let me just ask you. Do you know of any other resident at UHCMC who's been given a lvie hearing? A. I don't know")). Accordingly, because UHCMC is a private medical center and it employed Plaintiff has not demonstrated a likelihood of success on the merits on his live hearing claim.

**5. Plaintiff is not entitled to return to active employment.**

Similarly, as to return to active employment, 34 C.F.R. § 106.44(d) permits such an action as to a non-student when the employer is faced with harassment or assault allegations. 34 C.F.R. § 106.44(d) ("Nothing in this subpart precludes a recipient from placing a non-student employee respondent on administrative leave during the pendency of a grievance process that complies with §106.45")). Despite filing this lawsuit, Plaintiff cannot point to any other resident or fellow who has not been placed on an administrative leave when facing such serious allegations. (TR. at 63).

Plaintiff's Title IX expert admitted that the Title IX regulations do not require employers to conduct an individualized safety analysis before placing employees on leaves of absence. (TR. at 180 ("Q. You are clear that for employees, there is no individualized safety requirement, right? A. Right)). In fact, the Title IX expert conceded that a leave of absence is common when an employee is accused of sexual assault:

> Q. And just to be clear, as to employees, as a human resources professional, if there's a assault allegation, placing an employee on a paid administrative leave is pretty standard practice, correct? A. Correct.

(TR. at 183).

In this case, a paid leave is more than reasonable. The Title IX complaint alleges that Plaintiff sexually harassed and/or sexually assaulted a co-worker. (TR. at 69). Plaintiff admitted that the allegations in the complaint were "serious." (TR. at 38 and 69). Following the initial investigation, a written determination was issued on July 1, 2026 that found Plaintiff responsible for the allegations. (TR. at 43 and 69-70). The sanction issued was termination of employment. (TR. at 43).

Consistent with Plaintiff's view that the Title IX issues are serious, Plaintiff has been unsuccessful in forty transfer applications to other residency programs. (TR. at 48 and Exs. 19-

25). Plaintiff has disclosed the Title IX complaint, investigation, and initial written determination when applying to transfer to other programs. (TR. at 52). Plaintiff has received approximately thirty rejection notices. (TR. at 48).

Finally, Plaintiff admitted that Defendant has a duty to provide a safe environment for employees and patients. (TR. at 68). As a resident, Plaintiff is assigned day and night shifts, works at a large hospital, and rotates to hospitals not operated by Defendant. (TR. at 65). Most importantly, Plaintiff is not always with a supervisor during his workdays. (TR. at 67-68 ("Q. Okay. You do walk the hospital. It's a very large hospital and you interact with visitors and patients and other employees without a supervisor present, correct? A. Yes")). Accordingly, based on the Title IX regulations, Plaintiff's employee status, and the relevant facts, Plaintiff has not demonstrated a likelihood of success on the merits on his return to active employment claim.

**D. <u>Plaintiff Cannot Prove Irreparable Harm.</u>**

As with likelihood of success, the irreparable harm factor is a mandatory factor for an injunction. *Legacy Roofing Services LLC v. Fusco*, 710 F.Supp.3d 553, 563 (N.D. Ohio 2024). In *Tascarella v. Aptiv US General Services Partnership*, Case No. 26-3101, 2026 WL 2243787 (6th Cir. Aug. 4, 2026), the Sixth Circuit recently confirmed that the alleged harm "'must be both certain and immediate,' not 'speculative or theoretical.'" *Id.* at *3 (*citing D.T. v. Summer Cnty. Schs.*, 942 F.3d 324, 327 (6th Cir. 2019)). Plaintiff cannot prove certain and immediate harm.

Initially, the Title IX complaint is still being investigated by Defendant. (TR. at 212). The second written determination could be favorable to Plaintiff. Accordingly, no actual harm will be suffered until the second written determination is issued.

To leave no doubt, Plaintiff's immigration expert conceded that approved leaves of absences are appropriate for J-1 Visa holders. (TR. at 106-107). More importantly, despite the expert's law firm handling many J-1 Visa issues for residents in North Carolina (TR. at 110),

Plaintiff's immigration expert has never seen a situation where an individual is deported when the J-1 sponsor has approved a leave of absence:

> Q. Have you ever dealt with a situation where the sponsor has approved an administrative leave and the Department of Homeland Security or Secretary of State have come in and deported a resident?
> A. I have not seen that happen, no, sir.

(TR. at 109); (*see also* Tr. at 110 ("Q. And if the sponsor has approved it and advised the site sponsor of that, the alleged risks relating to this administrative leave are very minimal, correct? A. I don't know if I would necessarily kind of categorize it as minimal. It would – you know, if I represented Mr. Doe in a personal capacity, I would be very concerned about it, given the immigration environment. So I mean I think it would be more than a scant chance of a possibility")).

Based on Plaintiff's immigration expert and the status of the Title IX investigation, Plaintiff has not proven irreparable harm. *Tascarella v. Aptiv US General Services Partnership*, Case No. 26-3101, 2026 WL 2243787 *3 (6th Cir. Aug. 4, 2026); *Memphis A. Philip Randlph Inst. V. Hargett*, 978 F.3d 378 (6th Cir. 2020). Accordingly, the injunction is denied because this is a mandatory factor for an injunction. *Legacy Roofing Services LLC v. Fusco*, 710 F.Supp.3d 553, 563 (N.D. Ohio 2024).

**E. <u>There Is A Probability Of Substantial Harm To Others.</u>**

Under the third prong, the Court must (1) balance the harm Plaintiff would suffer if his request for a preliminary injunction were denied against the harm Defendant would suffer if an injunction were to issue, and (2) assess the impact the preliminary injunction might have on relevant third parties." *Procter & Gamble Co. v. Ga.-Pac. Consumer Prods. LP*, No. 1:09-cv-318, 2009 WL 2407764, at *10 (S.D. Ohio Aug. 3, 2009). The latter consideration applies only to specifically known, relevant third parties, as the Court considers harms to the general public under

the fourth prong, *see infra* Part D. *Lorillard Tobacco Co. v. Amouri's Grand Foods, Inc.*, 453 F.3d 377, 382 (6th Cir. 2006).

Plaintiff admitted that the Title IX complaint and investigation is a serious issue for any of Defendant's residents. (TR. at 70 ("Q. For any resident, whether you're Saudi Arabian, United States, or some other country, correct? A. Yes"). Consistent with the serious nature of the Title IX complaint, Plaintiff has been unsuccessful in forty transfer applications to other residency programs. (TR. at 48 and Exs. 19-25). Finally, as a resident, Plaintiff is assigned day and night shifts, works at a large hospital, and rotates to hospitals not operated by Defendant. (TR. at 65). Most importantly, Plaintiff is not always with a supervisor during his workdays. (TR. at 67-68 ("Q. Okay. You do walk the hospital. It's a very large hospital and you interact with visitors and patients and other employees without a supervisor present, correct? A. Yes")). Accordingly, if returned to active employment with Defendant, the risk of harm to Plaintiff is outweighed by the risk of harm to third parties.

**F. <u>The Injunction Does Not Advance The Public Interest.</u>**

Plaintiff's Title IX expert admitted that the Title IX regulations do not require employers to conduct an individualized safety analysis before placing employees on leaves of absence. (TR. at 180 ("Q. You are clear that for employees, there is no individualized safety requirement, right? A. Right)). In addition, Plaintiff's Title IX expert admitted that the Title IX regulations do not require employers to conduct an individualized safety analysis before placing employees on leaves of absence. (TR. at 180 ("Q. You are clear that for employees, there is no individualized safety requirement, right? A. Right)). Accordingly, Plaintiff has presented no evidence that Defendant's Title IX policies and procedures are not compliant with Title IX and, therefore, an injunciotn does not advance the public interest.

### G. Plaintiff Has Not Established The Rule 65(c) Security Requirement Should Be Waived.

Federal Rule of Civil Procedure 65(c) provides that a court may issue a preliminary injunction or TRO only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained. Fed. R. Civ. P. 65. Bond is not merely a procedural formality but the exclusive mechanism for compensating the restrained party if the movant does not prevail on the merits. *W.R. Grace & Co. v. Loc. Union 759, Int'l Union of United Rubber, Cork, Linoleum & Plastic Workers of Am.*, 461 U.S. 757, 103 S. Ct. 2177, 76 L. Ed. 2d 298 (1983); *Michigan Am. Fed'n of State Cnty. & Mun. Emps. Council 25, Loc. 1640 v. Matrix Hum. Servs.*, 589 F.3d 851 (6th Cir. 2009).

In this case, Plaintiff is seeking to return to active employment that could place Defendant at risk of liability to third parties. In addition, Plaintiff is asking that Defendant be required to conduct a live hearing – an act not mandated under its Title IX policies. Finally, Plaintiff has resources available to prosecute this matter. Accordingly, the bond shall be two hundred and fifty thousand dollars.

Respectfully submitted,

*/s/ David A. Campbell*

David A. Campbell (0066494)
Alyssa M. Belli (0096623)
Gordon Rees Scully Mansukhani, LLP
127 Public Square, Suite 5130
Cleveland, Ohio 44114
Phone: (216) 302-2531
Fax: (216) 539-0026
dcampbell@grsm.com
ambelli@grsm.com

*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 9th day of November, 2026, the foregoing was filed through the Court's CM/ECF electronic filing system and will be served upon all counsel of record.

*/s/ David A. Campbell*_____________
David A. Campbell (0066494)

*One of the attorneys for Defendant*